Richard Johnston - SBN 124524
131-A Stony Circle, Suite 500
Santa Rosa, California 95401
Telephone (707) 577-7422
Facsimile (707) 837-9532

Attorney for Plaintiff
Kathleen Marvin

**ORIGINAL FILED**

AUG 0 4 2008

Richard W. Wieking
Clerk, U.S. District Court
Northern District of California
San Jose

**RMW**

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

C08 03727

**PVT**

KATHLEEN MARVIN,

Plaintiff,

vs.

SUN MICROSYSTEMS, INC.
COMPREHENSIVE WELFARE PLAN,

Defendant.

)
)
)
) Case No.
)
) **COMPLAINT**
)
)
)
)
)
)

Plaintiff alleges:

### Jurisdiction and Venue

1.    This action arises under the Employee Retirement Income Security Act of 1974, 29 USC §1001 et seq. (ERISA) and more particularly 29 USC §§1132(a)(1)(B) and 1132(g). This court has jurisdiction in this matter under 29 USC §1132(e) and 28 USC §1367(a). At relevant times, Ms. Marvin resided in Campbell, California, and the performance of various of defendant's obligations, which obligations defendant failed and refused to perform as herein alleged, was due at that location.

//

//

## Factual Background

2.    Ms. Marvin, at relevant times, was an employee of Sun Microsystems, Inc. As a function of this employment, Ms. Marvin was and is a qualified participant in and beneficiary of defendant Sun Microsystems, Inc. Comprehensive Welfare Plan ("the Plan"), which was established and is maintained by Sun for and on behalf of certain of its employees. The Plan was and is an employee benefit plan as defined by 29 USC §1002(3).

3.    Ms. Marvin currently suffers, and has suffered at relevant times, from serious and disabling illness and/or injuries. Her condition has rendered her disabled according to the terms of Article 7 of the Plan, entitled "Long Term Disability," and thereby eligible for Long Term Disability ("LTD") benefits under the Plan.

4.    In April 2004, Ms. Marvin underwent invasive multi-level spinal fusion surgery in an attempt to remedy her very serious spinal condition, which included significant spinal stenosis, cervical myelopathy, and chronic cervical radiculopathy. In the aftermath of her surgery, and continuing to the present time, Ms. Marvin was and is unable to perform the work of her regular occupation at Sun, any reasonably related occupation for remuneration, or any other substantial gainful activity which exists in the national economy. In July 2004, the Plan commenced paying LTD benefits to Ms. Marvin.

5.    Even though she was medically unable to perform the work of her regular occupation at Sun or any other reasonably related occupation, Ms. Marvin accepted an assignment in a much lower level position, and for a different Sun division, in November 2004. Because of her medical condition, in order to do so she required very significant accommodations to her disability, and she had to work from her home. For example, she was compelled to use a special orthopedic reclining chair; she had to forego reviewing e-mails and other material on a computer monitor because she was unable to maintain a sitting position for

COMPLAINT

2

1   any length of time; and she had to curtail keyboarding due to the effect of her condition on her

2   ability to type and otherwise use her hands. She was also unable to attend staff meetings at

3   Sun. With these types of accommodations, and the ability to recline and rest at her home

4   throughout the day, she could perform significantly limited work; without them, she was unable

5   to work for Sun, or anyone else, at all. Because Sun was paying Ms. Marvin during this time,

6   the Plan ceased payment of LTD benefits in November 2004.

7

8       **6.**   In February 2005, Ms. Marvin was advised by Sun that her limited, disability-

9   accommodated position was being eliminated. Because she had been unable to return to

10   work in any meaningful fashion since her surgery, Ms. Marvin recognized that she was not in a

11   position to continue working, and she therefore accepted Sun's voluntary separation package.

12

13       **7.**   The Plan contains provisions specifically addressing a claimant's pursuit and

14   receipt of Social Security disability insurance benefits ("SSDI benefits") from the United States

15   Social Security Administration ("SSA"). In that connection the Plan provides in pertinent part:

16         If an Employee obtains an award of Social Security disability benefits after the 60 days
          immediately following the end of the initial 24 months of Disability, he or she may

17         request reinstatement of her or her Disability benefits under the Plan retroactive to the
          date as of which benefits were suspended by filing an appeal pursuant to Article 12 of the

18         Plan.

19   The Plan also incorporates SSDI benefit determinations into its own provisions regarding the

20   definition of "disability" for Plan purposes. In that connection the Plan provides:

21         For Disabilities incurred on or after January 1, 2001, during the first 24 months of
          Disability, an Employee will be considered to be Disabled only if the Claims

22         Administrator determines on the basis of Objective Medical Evidence that the Employee
          is unable to perform the work of his or her regular occupation or any reasonably related

23         occupation for remuneration. For Disabilities incurred on or after January 1, 2001, after
          24 months of Disability, an Employee will be considered Disabled only if he or she has

24         received an award of Social Security disability benefits and only for the period during
          which such Social Security disability benefits are payable.

25

26       **8.**   The Plan also provides in pertinent part, in Article 11, entitled "Claims

27   Procedure":

28

All claims for Plan benefits ... shall, within 365 days after the expense was incurred, be submitted by a covered individual to the Carrier engaged to perform administrative services with respect to Plan benefit, as appropriate, or to such other person or organization, as may from time to time be designated by Sun....

9.    In December 2006, SSA determined Ms. Marvin was totally disabled retroactively to February 15, 2005, the last day she had performed the limited disability-accommodated work from her home, and therefore entitled to SSDI benefits. As a matter of law, this necessarily involved a determination by SSA that Ms. Marvin was unable to perform any substantial gainful activity which exists in the national economy, *see* 20 CFR §404.1505(a), which determination was necessarily based on abnormalities objectively shown by medically acceptable clinical and laboratory diagnostic techniques. *See* 20 CFR §416.908.

10.    Based on the terms of the Plan and SSA's award of SSDI benefits to her in December 2006, in January 2007 Ms. Marvin sought to reinstate her LTD benefits under the Plan. On May 7, 2007, Matrix Absence Management, Inc., Claims Administrator for the Plan, wrongfully denied reinstatement on the following grounds:

1.    The Objective Medical Evidence contained in your records does not demonstrate an illness, injury or disease that prevented you from performing your regular occupation as of February 15, 2005. In fact, you worked full-time at Sun from November 1, 2004 through your notification date of February 15, 2005.

2.    You filed your claim for disability benefits more than 365 days after the first date such benefits could have been payable if you were otherwise eligible.

3.    Your current disability commenced after your participation in the Plan ended on April 16, 2005.

11.    On June 26, 2007, pursuant to the terms of the Plan, Ms. Marvin submitted to Sun's Review Authority an appeal of Matrix' refusal to approve reinstatement of her LTD benefits. Ms. Marvin explained to the Review Authority, among other things, the facts described above relating to her inability to return to the work force at any time after her April 2004 surgery, and the significant accommodations which had been required in order for her to undertake even the limited work-from-home assignment in late 2004 and early 2005. She also

COMPLAINT

4

1    reminded Sun that she was receiving disability benefits under Sun's separate Voluntary
2    Disability Plan, which she maintained was "evidence of my on-going and uninterrupted
3    disability and eligibility for benefits." She also explained that the timing of her request for
4    reinstatement was based on the SSDI award, and the Plan provisions respecting reinstatement
5    of benefits following such awards.

6

7        **12.**    On August 31, 2007, the Review Authority wrongfully denied Ms. Marvin's appeal
8    and confirmed Matrix' decision. The Review Authority justified its decision by stating variously
9    that "there were no extraordinary or extenuating circumstances to make an exception to the
10    Plan's requirements that a participant must file a claim for benefits within 365 days of
11    becoming disabled"; "there is insufficient Objective Medical Evidence to show that you had a
12    medical condition that rendered you unable to perform the work of your regular occupation or
13    any reasonably related occupation"; Sun's Voluntary Disability Plan "does not require Objective
14    Medical Evidence of the disability"; and an "award of Social Security disability benefits is not
15    considered Objective Medical Evidence." The Review Authority concluded by advising Ms.
16    Marvin that her June 26, 2007 appeal had been "the last step in your administrative appeal
17    rights under ERISA," and that she could "file suit in federal or state court within 2 years after
18    the occurrence of the loss for which your claim was made."

19

20    **First Cause of Action**
**Against the Plan**
21    **To Recover Benefits Due Under an ERISA Plan**
**Pursuant to 29 USC §1132(a)(1)(B)**
22    **and Attorney Fees and Costs Pursuant to 29 USC §1132(g)**

23        **13.**    Ms. Marvin refers to each and every foregoing paragraph of this complaint and
24    incorporates those paragraphs as though set forth in full in this cause of action.
25

26        **14.**    As a direct and proximate result of the improper acts and/or omissions herein
27    alleged, Ms. Marvin has had benefits wrongfully withheld from her under the terms of the Plan.
28

COMPLAINT                                        5

15.  As a direct and proximate result of the improper acts and/or omissions herein alleged, Ms. Marvin has been compelled to retain the services of an attorney in connection with the investigation of this claim and the prosecution of this action.

**WHEREFORE,** Ms. Marvin prays for judgment as follows:

AS TO THE FIRST CAUSE OF ACTION:

1.  An award of all LTD benefits wrongfully withheld, with pre-judgment and post-judgment interest thereon.

2.  An award of attorney fees and costs of suit as authorized by statute.

3.  For such other and further relief as the court may deem proper.

Dated: July 31, 2008

Richard Johnston
Attorney for Plaintiff
Kathleen Marvin

COMPLAINT

6