1
2
3
4   **E-FILED on    6/15/09
5
6
7
8          IN THE UNITED STATES DISTRICT COURT
9        FOR THE NORTHERN DISTRICT OF CALIFORNIA
10                 SAN JOSE DIVISION
11

**United States District Court**
For the Northern District of California

12   KATHLEEN MARVIN                    No. C-08-03727 RMW
13              Plaintiff,
14        v.                            ORDER GRANTING DEFENDANT'S
                                        MOTION TO DISMISS WITH LEAVE TO
15   SUN MICROSYSTEMS, INC.             AMEND
     COMPREHENSIVE WELFARE PLAN,
16
                Defendant.
17                                      **[Re Docket No. 5]**
18
19

20        Defendant Sun Microsystems, Inc. Comprehensive Welfare Plan (the "Plan") moves to

21   dismiss the present action with prejudice.  Plaintiff Kathleen Marvin ("Marvin") opposes the motion.

22   For the reasons set forth below, the court grants the defendant's motion to dismiss with twenty days

23   leave to amend.

24                          **I.  BACKGROUND**

25        The plaintiff Marvin was a former employee of Sun Microsystems, Inc. ("Sun").  Compl. ¶ 2.

26   As an employee, she was a qualified participant in and beneficiary of the defendant Plan, an

27   employee benefit plan established and maintained by Sun.  *Id.*  The Plan is an employee benefit plan

28   as defined by 29 U.S.C. § 1002(3).  *Id.*

1    On August 4, 2008, Marvin filed a complaint against the Plan alleging wrongfully withheld

2 benefits under the terms of the Plan. *Id.* ¶ 14.  Marvin seeks an award for wrongfully withheld

3 benefits, attorney's fees and costs, and any other and further relief the court may deem proper.  *Id.* at

4 6.

5    **A.  Marvin's Disability and Application for Plan Benefits**

6    In April 2004, Marvin underwent invasive multi-level spinal fusion surgery in an attempt to

7 remedy her spinal condition, which included significant spinal stenosis, cervical myelopathy, and

8 chronic cervical radiculophy.  *Id.* ¶ 4.  Afterwards, Marvin was unable to perform her job.  *Id.*

9 Consequently, in July 2004, the Plan began paying Marvin Long Term Disability benefits.  *Id.*

10    In November 2004, Marvin accepted a much lower level position at Sun working for a

11 different division.  *Id.* ¶ 5.  Her new position required significant accommodation for her disability.

12 She had to work from her home, was compelled to use a special orthopedic reclining chair, had to

13 forego reviewing emails and other material on a computer monitor because she was unable to

14 maintain a sitting position for any length of time, and had to restrict the use of a keyboard due to the

15 effect of her condition on her ability to type and the use her hands.  *Id.*  Because she was receiving a

16 salary from Sun, in November 2004 the Plan ceased payments to Marvin for Long Term Disability

17 benefits.  *Id.*

18    In February 2005, Marvin's position at Sun was eliminated and Marvin accepted Sun's

19 voluntary separation package.  *Id.* ¶ 6.  Marvin contends she accepted the package after recognizing

20 that because she was unable to return to work in any meaningful fashion since her surgery, she was

21 not in a position to continue working.  *Id.*

22    In December 2006, approximately twenty-two months after the end of her employment

23 relationship with Sun, the Social Security Administration ("SSA") determined Marvin was disabled.

24 *Id.* ¶ 9.  The SSA's determination of disability entitled Marvin to Social Security Disability

25 Insurance benefits retroactive to February 15, 2005, the last day Marvin worked for Sun.  *Id.*

26    After receiving the SSA's determination of disability, Marvin sought in January 2007 to

27 reinstate Long Term Disability benefits under the Plan.  *Id.* ¶ 10.  On May 2007, the Claims

28

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1   Administrator for the Plan, Matrix Absence Management, Inc., denied reinstatement.  *Id.*  The

2   Claims Administrator cited three reasons for the denial:

3       (1) the Objective Medical Evidence did not demonstrate an illness, injury, or disease that

4           prevented Marvin from performing her regular occupation as of February 15, 2005;

5       (2) the claim was filed more than 365 days after the first date the benefits could have been

6           payable if Marvin was otherwise eligible; and

7       (3) Marvin's current disability commenced after participation of the Plan ended on April 16,

8           2005.

9   *Id.*

10      In response to the denial, on June 16, 2007, Marvin appealed the Claim Administrator's

11  decision to Sun's Review Authority.  *Id.* ¶ 11.  In her appeal, Marvin described her post-surgery

12  limited work-from-home assignment with Sun and the accommodations required for her to undertake

13  the work.  *Id.*  Further, as evidence of her on-going and uninterrupted disability, she reminded the

14  Review Authority that she was receiving disability benefits under Sun's separate Voluntary

15  Disability Plan.  *Id.*

16      On August 31, 2007, the Review Authority denied Marvin's appeal for reinstatement.  *Id.* ¶

17  12.  The Review Authority reasoned that:

18      (1) there were no extraordinary or extenuating circumstances to make an exception to the

19          Plan's requirements that a claim for benefits must be filed within 365 days of becoming

20          disabled; and

21      (2) there was insufficient Objective Medical Evidence to show that Marvin had a medical

22          condition rendering her unable to perform work of her regular occupation or reasonably

23          related occupation.

24  *Id.*  The Review Authority also explained that an award for Social Security disability benefits is not

25  considered Objective Medical Evidence.  *Id.*  Further, since Sun's voluntary Disability Plan does not

26  require a showing of Objective Medical Evidence, eligibility for benefits under the voluntary plan is

27  also insufficient to show Objective Medical Evidence.  *Id.*

28

**United States District Court**
For the Northern District of California

1    Marvin was advised by the Review Authority that the June 26, 2007 appeal was her last step

2  in the administrative appeal rights under ERISA, and that she could file suit in federal or state court

3  within two years after the occurrence of the loss for which her claim was made.  *Id.*

4    **B.  Relevant Sections of Sun Microsystems, Inc. Comprehensive Welfare Plan**

5    The following sections of the Plan are relevant to the instant action.

6    Section 11.3 (Claims for Plan Benefits)  requires claims to be submitted within 365 days

7  after the expense was incurred:

8    11.3    Claims for Plan Benefits.  All claims for Plan benefits . . . shall, within 365 days after
        the expense was incurred, be submitted by a covered individual to the Carrier
9        engaged to perform administrative services with respect to Plan benefit, as
        appropriate, or to such other person or organization, as may from time to time be
10        designated by Sun pursuant to Section 9.3.[1] . . .

11    Next, Section 7.8 (Suspension and Reinstatement of Benefits; Limitations) describes the

12  prerequisite for when disability benefits will be suspended and the necessary subsequent action

13  required to reinstate payment of benefits following an award of Social Security disability benefits.

14  The provision makes a distinction based on whether Social Security disability benefits are awarded

15  within 60 days of the initial 24 months of Disability.  The critical portions of Section 7.8 state:

16    7.8    Suspension and Reinstatement of Benefits; Limitations.  . . . [I]f an Employee has not
        received an award for Social Security disability benefits by the end of the initial 24
17        months of Disability, Disability benefits under the Plan will be suspended.  If the
        Employee receives an award of Social Security disability benefits within the 60 days
18        immediately following the end of the initial 24 months of Disability, Disability
        benefits under the Plan will be reinstated retroactive to the date as of which benefits
19        were suspended.  If the Employee does not receive an award of Social Security
        disability benefits within the 60 days immediately following the end of the initial 24
20        months of Disability, any claim for continuation of Disability benefits will be deemed
        to be denied and such denial may be appealed pursuant to Article 12[2] of the Plan.  If
21        an Employee obtains an award of Social Security disability benefits after the 60 days
        immediately following the end of the initial 24 months of Disability, he or she may
22        request reinstatement of his or her Disability benefits under the Plan retroactive to the
        date as of which benefits were suspended by filing an appeal pursuant to Article 12 of
23        the Plan.  In order for the Employee to qualify for reinstatement of benefits the award
        of Social Security disability benefits must relate to the same Disability for which the
24        Employee was receiving Disability benefits under the Plan prior to suspension of
        such benefits.  Reinstatement will be allowed only if the Social Security award

25

26    [1]    Section 9.3 (Service in More Than One Fiduciary Capacity) states "Nothing herein shall
    prohibit any person or group of persons from serving in more than one fiduciary capacity with
27  respect to the Plan."

28    [2]    Section 12.2 (Right of Appeal) allows a person denied benefits to appeal the denial by
    submitting a written request for review within 60 days after receiving written notice of the denial.

**United States District Court**
For the Northern District of California

1    indicates that the Disability existed on the date as of which benefits were suspended
2    and only for the period with respect to which the Employee is eligible to receive
     Social Security disability benefits.

3    Lastly, Section 7.3 (Exclusions and Limitations) defines when successive periods of

4    Disability separated by less than six consecutive months of continuous Active Work should be

5    considered one period of Disability:

6        7.3    Exclusions and Limitations.  . . . Successive periods of Disability separated by less
                than 6 consecutive months of continuous Active Work at the Participant's normal
7               work schedule shall be considered one period of Disability, unless subsequent
                Disability is due to an illness or injury found by the Claims Administrator, in its sole
8               discretion, to be entirely unrelated to the cause of the previous Disability and
                commences after return to Active Work with a Participating Company. . . .
9

     **C.  Standard for Motion to Dismiss**
10

11       In order to withstand a motion to dismiss, Marvin must have pled enough facts to state a

12   claim to relief that is plausible on its face.  *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955,

13   1974 (2007).  "All allegations of material fact are taken as true and construed in the light most

14   favorable to the nonmoving party."  *Burgert v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661,

15   663 (9th Cir. 2000).  However, the court is not required to accept as true allegations contradicted by

16   documents referenced in the complaint.  *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-

17   96 (9th Cir. 1998).

18                                    **II.  ANALYSIS**

19       The defendant contends the plaintiff's request for benefits was denied in part because the

20   claim was filed more than 365 days after which the benefits were sought.  Here, Marvin sought in

21   January 2007 payment of Long Term Benefits dating back to February 15, 2005.  The defendant

22   argues the delay of over twenty-two months exceeds the Plan's 365-day filing requirement.  Further,

23   there is no indication that Marvin sought Plan benefits immediately after her employment with Sun

24   ended in February 2005.  Nor did she seek such benefits anytime during 2005 and 2006.

25       Marvin alleges two different theories why her claim has merit and should be resolved in her

26   favor by the court.  First, Marvin contends her request for benefits in January 2007 was not an initial

27   claim, which she concedes would be barred by the 365-day limit, but a request for reinstatement of

28   benefits stemming from her initial disability beginning April 2004.  Opp'n at 4-6.  Second, Marvin

     argues in the alternative, that her January 2007 request is an untimely administrative appeal to the

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITHOUT PREJUDICE; No. C-08-03727 RMW
LL                                              5

1    "suspension" of benefits in November 2004 that the court should hear on its substantive merits.  *Id.*

2    at 6-8.

3              **A.  Whether the January 2007 Request is a New Claim or a Reinstatement**

4        Marvin alleges her disability benefits were "suspended" in November 2004 and her request

5    for benefits in January 2007 was a request for reinstatement of previously awarded benefits.  Citing

6    Section 7.3 of the Plan, she alleges her period of disability from April 2004 to November 2004 and

7    the period from February 2005 onward should be considered one and not two distinct periods.

8        Reinstatement is discussed in Section 7.8 of the Plan.  For benefits to be reinstated, payment

9    of benefits must first be suspended.  Section 7.8 states that benefits are suspended at the end of the

10   initial 24-month coverage period if an employee does not receive an award of Social Security

11   disability benefits.  Section 7.8 then further explains how benefits may be reinstated if Social

12   Security disability benefits are awarded after the initial 24-month coverage period.  The section

13   requires that reinstatement "will be allowed only if the Social Security award indicates that the

14   Disability existed on the date as of which benefits were suspended."

15       As an initial matter, Marvin does not allege facts in support of the conclusion that her

16   benefits were suspended after an initial 24-month coverage period.  Marvin's initial coverage lasted

17   at most five months, from July to November of 2004, not the prerequisite 24-months. Rather, Marvin

18   alleges in her complaint that the Plan ceased paying benefits because she returned to work and was

19   therefore no longer eligible for disability benefits.  Compl. ¶ 5.

20       Instead of adhering to the restrictions of Section 7.8, Marvin contends that the Plan does not

21   strictly limit reinstatement (and suspension) to the context of an initial 24-month coverage period.

22   However, Marvin alleges no facts to support this conclusion.  Specifically, she cites no language

23   from the coverage plan to support her argument that the Plan allows for suspension of benefits in a

24   different context.  Further, as allowed under Section 7.8, reinstatement requires the Social Security

25   award indicate disability on the date benefits were suspended.  Marvin's Social Security award dates

26   her disability retroactive to February 15, 2005.  However, Marvin contends her benefits were

27   suspended on November 2004.  Without more, there is no basis for Marvin's argument that she

28

**United States District Court**
For the Northern District of California

should be reinstated benefits under Section 7.8.  Nor is there support to extend reinstatement of benefits outside the context requiring an initial 24-month coverage period.

### B. Whether the January 2007 Request is an Untimely Administrative Appeal

Marvin argues in the alternative, that if reinstatement requires an initial 24-month coverage period, Marvin's request for benefits in January 2007 is an administrative appeal.  Marvin concedes that such a request would be an untimely appeal.  And since the January 2007 request was not denied by Sun on the basis of it being an untimely appeal for reinstatement, the August 2007 denial by Sun's Review Authority is erroneous.  Further, Marvin contends that Sun should now be barred from raising a timeliness objection since it did not initially raise one in its original denial.  As a result, Marvin argues her claim for benefits should be heard by the court on the basis of its substantive merits.

As alleged, the facts do not support this theory.  Section 12.2 (Right of Appeal) is clear that a written request for review must be submitted within 60 days[3] after receiving written notice of a denial from a Claims Administrator.  Here, Marvin does not allege having received a denial of benefits in November 2004, only that the Plan cease payment of benefits because she returned to work.  Further to suggest her request in January 2007, more then twenty-five months after she last received benefits, is an appeal contradicts the alleged facts stated in the complaint.  The complaint makes no allegation the January 2007 request was an appeal.  If instead, Marvin directly addressed her January 2007 request to the Review Authority in charge of appeals, then her theory would have some hint of plausibility.  However, without additional allegations and considering the facts in the light most favorable to the non-moving party, Marvin's application for benefits fails to state a claim upon which relief can be granted.

---

[3]     Citing the Plan's Summary Plan Description and the language used in all of its claim denial letters, the defendant contends the Plan actually allows 180 days to submit an appeal as required by 29 C.F.R. § 2560.503-1(h)(4).  In a Motion to Dismiss, the court may not consider extrinsic evidence and as such uses the 60-day limit.  Nothing in the court's analysis suggests a 180-day limit would make the plaintiff's argument more plausible.

**III.  ORDER**

      For the foregoing reasons, the defendant's motion to dismiss is granted.  Twenty days leave to amend is granted, however, the court at this point does not foresee how plaintiff can successfully amend.

DATED:        6/15/09

RONALD M. WHYTE
United States District Judge

**United States District Court**
For the Northern District of California

1  **Notice of this document has been electronically sent to:**

2  **Counsel for Plaintiff:**

3  Richard Johnston          RichardJohnstonEsq@gmail.com

4  **Counsel for Defendant:**

5  Robert Frank Schwartz       rschwartz@truckerhuss.com

6  Counsel are responsible for distributing copies of this document to co-counsel that have not
   registered for e-filing under the court's CM/ECF program.

7

8

9

   **Dated:**    6/15/09                              TER
10                                           **Chambers of Judge Whyte**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITHOUT PREJUDICE; No. C-08-03727 RMW
LL                                    9