**United States District Court**
For the Northern District of California

**E-FILED on** 1/11/10

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KATHLEEN MARVIN<br><br>Plaintiff,<br><br>v.<br><br>SUN MICROSYSTEMS, INC. COMPREHENSIVE WELFARE PLAN,<br><br>Defendant. | No. C-08-03727 RMW<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT<br><br>**[Re Docket No. 22]** |

Defendant Sun Microsystems, Inc. Comprehensive Welfare Plan moves to dismiss the First Amended Complaint with prejudice. Plaintiff Kathleen Marvin ("Marvin") opposes the motion. Defendant's motion came on for hearing before the court on December 11, 2009. Following the hearing, defendant filed an administrative motion seeking leave to file a "post-hearing clarification" to its motion to dismiss (Docket 34). Plaintiff filed a substantive response to the administrative motion. The administrative motion is granted, and both defendant and plaintiff's post-hearing briefs have been considered in connection with defendant's motion. Having considered the papers submitted by the parties and the arguments of counsel at the hearing, and for good cause appearing for the reasons set forth below, the court denies defendant's motion to dismiss.

## I. BACKGROUND

Marvin is a former employee of Sun Microsystems, Inc. ("Sun") and brings this action under ERISA, 29 U.S.C. § 1132(a), to recover long term disability benefits.

In April 2004, Marvin underwent invasive multi-level spinal fusion surgery in an attempt to remedy a serious spinal condition. First Amended Complaint ¶ 18. Afterwards, Marvin was unable to perform her job and in July 2004, defendant began paying Marvin Long Term Disability benefits. *Id.* In November 2004, Marvin accepted a much lower level position at Sun working for a different division. *Id.* ¶ 19. Her new position required significant accommodation for her disability. *Id.* Because she was receiving a salary from Sun, defendant terminated Marvin's long term disability benefits in November 2004. *Id.*

In February 2005, Marvin's position at Sun was eliminated and Marvin accepted Sun's voluntary separation package. *Id.* ¶ 6. The separation package included a Release and Waiver Agreement, dated April 16, 2005. That release provides, in relevant part, that in exchange for the payment and benefits detailed in the agreement, Marvin and her representative, successor and assigns:

> willingly and voluntarily release and forever discharge Sun of and from any and all claims ... whether known or unknown, arising out of or in any way connected with the employment or termination of the employment of Employee by Sun, including but not limited to . . . claims under . . . the Employee Retirement Income Security Act ("ERISA"), as amended, ... based on any decision, action, or omission by Sun which occurred on or before the date the Employee signs this Agreement.

Motion at Exh. 3.

In December 2006, approximately twenty-two months after the end of her employment relationship with Sun, the Social Security Administration ("SSA") determined Marvin was disabled, retroactive to February 15, 2005, the last day that she had performed work for Sun. First Amended Complaint, ¶ 21. SSA awarded disability benefits, necessarily finding that she was unable to perform any substantial gainful activity which exists in the national economy, given her age, education, and residual functional capacity. 20 C.F.R. §404.1505(a).

Marvin thereafter sought further long term disability benefits under the Plan. *Id.* ¶22. On May 2007, the Claims Administrator, Matrix Absence Management, Inc., denied reinstatement. *Id.* The Claims Administrator cited three reasons for the denial:

(1) the Objective Medical Evidence did not demonstrate an illness, injury, or disease that prevented Marvin from performing her regular occupation as of February 15, 2005;

(2) the claim was filed more than 365 days after the first date the benefits could have been payable if Marvin was otherwise eligible; and

(3) Marvin's current disability commenced after participation of the Plan ended on April 16, 2005.

*Id.*

Marvin appealed the Claim Administrator's decision to Sun's Review Authority on June 16, 2007. *Id.* ¶24. The Review Authority denied Marvin's appeal on August 31, 2007. *Id.* ¶25. The Review Authority reasoned that:

(1) there were no extraordinary or extenuating circumstances to make an exception to the Plan's requirements that a claim for benefits must be filed within 365 days of becoming disabled; and

(2) there was insufficient Objective Medical Evidence to show that Marvin had a medical condition rendering her unable to perform work of her regular occupation or reasonably related occupation.

*Id.* The Review Authority also explained that an award for Social Security disability benefits is not considered Objective Medical Evidence. *Id.* Further, since Sun's voluntary Disability Plan does not require a showing of Objective Medical Evidence, eligibility for benefits under the voluntary plan is also insufficient to show Objective Medical Evidence. *Id.*

Marvin was advised by the Review Authority that the June 26, 2007 appeal was her last step in the administrative appeal rights under ERISA, and that she could file suit in federal or state court within two years after the occurrence of the loss for which her claim was made. *Id.*

Marvin filed suit on August 4, 2008. The court granted defendant's motion to dismiss on June 15, 2009, and granted plaintiff leave to amend. Marvin filed a timely amended complaint, and defendant now again seeks dismissal with prejudice.

## II. ANALYSIS

Defendant seeks dismissal on two theories: first, it contends that Marvin's clam for benefits was untimely in that it was brought nearly two years after the alleged date of disability and the Plan requires all claims to be filed within one year; and second, that the release executed by Marvin bars the claim. Each will be addressed in turn.

### A. Timeliness of Claim

Defendant first contends that Marvin's claim is barred because it was not submitted within the time frame required under the Plan. Pointing to Section 11.3 of the Plan, defendant argues that any claim for benefits must be submitted within 365 days. Section 11.3 provides:

> <u>Claims for Plan Benefits</u>. All claims for Plan benefits ... shall, within 365 days after the expense was incurred, be submitted by a covered individual to the Carrier engaged to perform administrative services with respect to Plan benefit [sic] ....

Defendant contends that Section 11.3 "clearly provide[s] that a participant must apply for benefits no more than 365 days after the first date for which benefits are sought." Motion at 6. Defendant argues that plaintiff's claim for benefits is barred because she did not submit her claim for long term disability benefits until nearly two years after her claimed entitlement to benefits arose.

Plaintiff asserts two arguments in opposition. First, she contends that there is no clearly stated consequence to a failure to timely submit a claim, unlike other provisions in the Plan in which the consequences of non-compliance are set forth. Thus, plaintiff argues, the Plan cannot be interpreted so as to provide that the late filing of a claim may result in the claim's denial. Plaintiff relies heavily on the doctrine of *expressio unius est exclusio alterius* – that the expression of one thing is the exclusion of another – to support her contention that because the Plan does not state that a claim may be denied as untimely if not submitted within the specified time frame, whereas other provisions do set forth consequences for failure to comply, the Plan cannot be so interpreted as to allow denial on grounds of untimeliness.

Second, plaintiff asserts that Section 11.3 does not clearly put participants on notice of when they need to file a claim. In the context of a claim for long term disability benefits, she argues, the 365-day provision is ambiguous such that the issue cannot be resolved on a motion to dismiss.

ORDER DENYING DEFENDANT'S MOTION TO DISMISS; No. C-08-03727 RMW
TER                                    4

The court agrees. Section 11.3 imposes a 365-day time frame "after the expense was incurred" in which to submit a claim. While its application to a claim for reimbursement of expenses is readily apparent, its application is less clear in the context of a request for long term disability benefits. While defendant interprets the provision to mean that a long term disability claimant must submit the claim within 365 days after the date for which benefits are sought, such an interpretation is not clearly evident from the language of the clause itself. Thus, the court is not inclined to dismiss the claim at this juncture.

Defendant also suggests that the Summary Plan Description sets forth a much shorter period: 45-days from the first compensable day of disability. Motion Ex. 2 at 209. It notes, however, that because the Plan's one-year time limit was more beneficial to plaintiff in denying plaintiff's claim, it applied the one-year limit. Based on the present briefing, the court cannot discern the substantive importance of the time limit set forth in the Summary Plan Description, as opposed to the Plan itself, nor the effect of defendant's failure to administratively deny the claim on that basis, and accordingly, the court does not reach such issues here.

**B. Effect of Release**

Defendant also contends the Marvin's claim is barred by the release she signed upon termination of her employment. Defendant argues that the April 2005 Release "clearly addresses" claims under ERISA and that plaintiff specifically discharged Sun and its affiliates from such claims. Motion at 9.

In opposition, plaintiff first notes that it is improper to consider the effect of the Release on a motion to dismiss. The Release is a matter of defense that can be raised, but it has not been pleaded in the First Amended Complaint. Thus, it cannot be considered on a motion to dismiss without converting the motion to one for summary judgment. Plaintiff further argues that the Release, properly interpreted, does not bar plaintiff's claim. By its terms, the release addresses the claims arising from any "decision, action or omission by Sun which occurred on or before the date Employee signs this Agreement." Opp. at 12, citing Ex. 3 to Defendant's Motion at ¶2. Plaintiff signed the Release on April 15, 2005. Sun engaged in no "decision, action or omission" until early in 2007 when the Plan denied plaintiff's claim for long term disability benefits.

In defendant's post-hearing brief, it seeks to clarify that plaintiff was in fact eligible for long-term disability benefits as of her first alleged day of disability (February 15, 2005) without a further 90-day waiting period "because she had already experienced a period of disability due to the same condition less than 6 months earlier." Defendant's Post-Hearing Brief at 1. From this, defendant presumably asserts that plaintiff's disability claim was ripe when she executed the April 2005 Release and thus was within the scope of the released claims.

In response, plaintiff notes that if her claim for benefits had accrued as of February 2005, then it was expressly carved out from the Release by paragraph 5 of that agreement, which expressly provides that the Release "shall not affect any rights Employee may have with respect to ... those Sun employee benefit plan benefits which have accrued and vested as of the Effective Date and which, by their express terms, survive any termination of employment." Plaintiff's Post-Hearing Brief at 2, quoting Release Paragraph 5.

Plaintiff has the better argument. The Release provides, in relevant part, that in exchange for the payment and benefits detailed in the agreement, Marvin released:

> any and all claims ... whether known or unknown, arising out of or in any way connected with the employment or termination of the employment of Employee by Sun, including but not limited to . . . claims under . . . the Employee Retirement Income Security Act ("ERISA"), as amended, ... based on any decision, action, or omission by Sun which occurred on or before the date the Employee signs this Agreement.

Motion at Exh. 3. Although the Release includes claims under ERISA, the Release is limited to those arising out of a decision, action or omission by Sun (including affiliates) prior to the date of the execution of the Release. It does not apply to claims arising out of decisions, actions or omissions occurring after the execution of the Release. Paragraph 8 of the Release acknowledges that it does not apply to any rights or claims that may arise after the employee executes the agreement. Moreover, paragraph 5 excludes from the Release any accrued and vested rights under the Sun employee benefit plan which survive the termination of employment. Thus, the Release does not bar plaintiff's claim for long term disability benefits and it provides no basis for dismissing the action.

## III. ORDER

For the foregoing reasons, the defendant's motion to dismiss is denied.

DATED: 1/11/10

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

Richard Johnston         RichardJohnstonEsq@gmail.com

**Counsel for Defendant:**

Robert Frank Schwartz    rschwartz@truckerhuss.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**   1/11/10                                    TER
                                                **Chambers of Judge Whyte**